IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Angela Jenice Robinson,<br><br>      Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>      Defendant.<br>_____ | Civil Action No.2:10-185-DCN-BHH<br><br><br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

  This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

  The plaintiff, Angela Jenice Robinson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and social security income ("SSI") pursuant to Titles II and XVI of the Social Security Act respectively.

### **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

  The plaintiff was 28 years old on the alleged onset date, and 32 years old as of the date of the decision of the Administrative Law Judge (ALJ). (R. at 25, 92, 97.) She has a high school education (R. at 25, 30) and past relevant work as a customer service representative and surgical technician. (R. at 125, 138-45.) She alleges she has been disabled since February 21, 2005, due to rheumatoid arthritis, asthma, depression, migraines, high blood pressure, gastroesophageal reflux disease, a shoulder tear, and ovarian cysts. (R. at 15, 38, 92, 97.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff applied for disability insurance benefits and supplemental security income, on September 11, 2006. (R. at 92-94, 97-100.) Her application was denied in an initial determination and upon reconsideration. (R. at 40-43, 46-49, 53-54.) An administrative hearing with an Administrative Law Judge was held on January 12, 2009. (R. at 20-39.) On February 17, 2009, in an unfavorable decision, the ALJ found that plaintiff was not disabled within the meaning of the act. (R. at 9-19.) As the Appeals Council denied the plaintiff's request for review (R. at 1-3), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)     The claimant meets the insured status requirements of the Social Security Act through June 30, 2010
>
> (2)     The claimant has not engaged in substantial gainful activity since February 21, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3)     The claimant has the following severe impairment: rheumatoid arthritis (20 CFR 404.1521 *et seq.*).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> (5)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with no climbing of ladders; occasional postural limitations; and limited handling and fingering.
>
> (6)     The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (7)     The claimant has not been under a disability, as defined in the Social Security Act, from February 21, 2005, through the date of this decision (20 CFR 404.1520(f)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) performing the Listing analysis; (2) failing to consider the combined effects of her impairments; (3) failing to accord the opinion of her treating physician controlling weight; and (4) failing to perform a function-by-function analysis to determine the plaintiff's residual functional capacity ("RFC"). The Court will address each alleged error in turn.

**I.    Listing 14.09**

The plaintiff first complains that the ALJ did not perform a proper Listing analysis at Step Three of the sequential process. At this step, a claimant is considered presumptively disabled provided she has an impairment that meets or equals a Listing. See 20 C.F.R. § 404.1520(d). The Listing of Impairments, found at 20 C.F.R. pt. 404, subpt. P, app. 1, describes impairments considered severe enough to prevent an individual from doing any substantial gainful activity. *See id.* § 404.1525(a).

**Listing 14.09 - Inflammatory arthritis.**

    A. Persistent inflammation or persistent deformity of:

        1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00(C)(6)); or

        2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00(C)(7)).

Or

    B. Inflammation or deformity in one or more major peripheral joints with:

        1. Involvement of two or more organs/body systems with one of the organs/body systems involved at least to a moderate level of severity; and

        2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09(B).

The plaintiff's argument in this regard is not particularly specific. (Pl. Brief at 14; Pl. Resp. at 2.) The plaintiff contends that there is evidence that her rheumatoid arthritis limited her ability to stand for more than one hour at a time as far back as 2001 (R at 207) and that "she absolutely did suffer from joint pain, swelling, tenderness on physical examination, etc." (Pl. Brief at 14). The plaintiff summarily concludes, "There is not one element of this listing that is NOT present in the record and for well beyond the duration required." *Id.* Apart from this generalized citation to evidence of arthritis, however, the plaintiff has not explained how she meets the actual criteria of the Listing, either Subsection A or B. "For a claimant to show that her impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Specifically, section 14.00(C)(6), cited by the applicable Listing, and which itself refers to Section 1.00(B)(2)(b), defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Ineffective ambulation is "defined generally as having insufficient lower extremity function . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00(B)(2)(b). As far as the Court's attention has been directed, no treatment records or examination notes exist, which document an inability to ambulate effectively, to wit, that the plaintiff had insufficient lower extremity function to permit independent ambulation *without the use of a hand-held assistive device* or devices that limited the functioning of both of her upper extremities. *See id.* § 1.00(B)(2)(b). The ALJ similarly concluded. (R. at 16.)

To the extent the plaintiff believes that she satisfies Subsections (A)(2) or (B), she does not explain it. Instead, her principal accusation in regards to the entire Listing is that the ALJ himself did not complete a full and proper analysis. (See Pl. Resp. at 2.) But in the

absence of some indication that the outcome could have been different, but for the alleged error, then any mistake in the decision below is necessarily harmless and would not justify any remand. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). On appeal, the plaintiff necessarily has the burden to connect the evidence of her arthritis and associated limitations to the demands of the Listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987) (noting that the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition); *Spaulding v. Astrue*, 2010 WL 3731859, at *16 (S.D.W. Va.2010). She has not.

Admittedly, the ALJ's Listing analysis is not overly thorough. It is, however, somewhat more than the plaintiff would suggest. While the ALJ started his analysis on page 5 of the record, the Listing was indirectly revisited in consideration of Dr. Gregory Niemer's opinion that the plaintiff met it. The plaintiff rightly deflects the defendant's efforts in post-hoc justification. But, in all the plaintiff has done very little to demonstrate how she satisfies the Listing, which is necessarily her burden, below and before this Court.

The Court would not recommend remand for any deficiency in the Listing analysis.

## II.     Combined Effects of the Impairments

The plaintiff next contends that the ALJ erred by failing to evaluate the combined effect of her impairments. (Pl.'s Br. at 1, 14-15.) When a claimant suffers from multiple impairments, the ALJ must consider their combined effect in determining whether the claimant is disabled. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Hicks v. Gardner*, 393 F.2d 299, 301 (4th Cir. 1968). Congress has explicitly required that "the combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe. 42

U.S.C. § 423(d)(2)(c); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.1989). As an important "corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50.

In *Walker*, the Fourth Circuit remanded the plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the claimant's impairments. *See id.* at 49-50. The ALJ found that the claimant suffered from several ailments but noted the effect or non-effect of each impairment separately. *See id.* The ALJ summarily concluded that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4.' *Walker*, 889 F.2d at 49. The Fourth Circuit rejected this conclusion as inadequate because the ALJ neither analyzed nor explained his evaluation of the cumulative effect of the claimant's impairments. *See Id.* at 49-50.

The ALJ's decision regarding the combined effects of the plaintiff's impairments, in this case, is not substantially more detailed than that in *Walker*. Frankly, in the Court's experience, few are. But, to the Court, the ALJ has done enough, particularly in light of the plaintiff's own limited explanation of how more consideration might have changed the outcome.

To start, the ALJ, albeit in boilerplate, separately indicated both that he considered the impairments in "combination" and the "entire record." (R. at 5.) In more specific explanation of these general statements of process, the ALJ did, in fact, consider impairments taken together. (See, e.g., R. at 6.) Specifically, he addressed the plaintiff's severe arthritis and non-severe asthma, migraines, depression, hip bursitis, and torn right shoulder muscle, all in a single paragraph as part of his RFC formulation. *Id.* While not overwhelmingly so, even this much discussion puts the present case outside the factual ambit of *Walker*. Here, there is at least plain treatment of all the impairments together by the ALJ.

Moreover, other circuit courts of appeal have agreed that an ALJ's separate discussion of a claimant's impairments and other evidence of record is sufficient to show that he sufficiently considered the claimant's impairments in combination. *See Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) (finding that ALJ sufficiently considered a claimant's impairments in combination when he separately discussed each impairment, the complaints of pain and the daily activities, and made a finding that the claimant's impairments did not prevent her from performing her past relevant work). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Browning*, 958 F.2d 821 (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)). And this seems a sensible view. To the extent the ALJ expressly discusses all of the relevant impairments and symptoms at some juncture in the decision, even if distinctly -- by virtue of the limits of form and prose, it would be a strange presumption to assume that he somehow simultaneously failed to consider them in the context of their combined effect, simply for a failure to say so more directly and thoroughly than the rote pronouncement that he did. The ALJs are well aware of their responsibility to consider it all.

And, to that end, therefore, it is the plaintiff's responsibility to explain how the ALJ's alleged failure to be more complete in explanation, than is present here, somehow harmed the conclusion drawn. Respectfully, the Court would suggest that the plaintiff again has done much less than is required. The plaintiff's objection stops largely at the accusation that the ALJ's consideration is too thin, which, as the plaintiff contends, is the appropriate legal point, considering the applicable standard of review, but fails to take the additional step of suggesting how the outcome could have been different. In other words, there is a failure to demonstrate anything more than the harmlessness of the error.

To restate, the undersigned believes that the ALJ satisfied his obligation to treat the combined effects of all relevant impairments, in the first instance, and, further, that the plaintiff has not offered any reason to conclude that more would have produced a different result.

9

**III.     Treating Physician**

The plaintiff also argues that the ALJ erred in failing to assign proper weight to the opinion of Dr. Gregory Niemer. (Pl.'s Br. at 1, 15-16.) It is true that the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

In a Physician's Statement dated January 21, 2009, Dr. Niemer reported that he had a longstanding treatment history with the plaintiff and was familiar with her condition and records. (R. at 529.) He described the plaintiff's severe joint pain, swelling, tenderness, and inflammation in regards to their effect on her hands, knees, ankles, and feet. *Id.* Dr. Niemer noted that she had been diagnosed with rheumatoid arthritis in 2000 and had been receiving treatment by him and his office since that time, including infusions of Remicade every six weeks for two years. *Id.* Dr. Niemer concluded that the plaintiff's condition met the criteria set forth in Listing 14.09 – Inflammatory Arthritis (A)(1). *Id.*

The plaintiff's exclusive objection to the ALJ's treatment of this opinion is that the ALJ dismissed it "based on nothing." (Pl. Brief at 16.) She states, "The ALJ failed to provide one good reason for rejecting Dr. Niemer's opinion." *Id.* The plaintiff is not correct. The ALJ

specifically addressed Dr. Niemer's opinion and found it to be in conflict with his own treatment records that the plaintiff was doing well with medication; lacked any significant deficits; routinely had 5/5 motor strength, intact sensation, no atrophy, normal gait and no cyanosis, clubbing or edema of the extremities; and was in no acute distress in May 2007. (R. at 18.)  The plaintiff has not challenged any of these observations.  So to the extent the plaintiff simply charges that the ALJ had no reason for concluding that the opinion was entitled to less than controlling weight, the point is unpersuasive; he did.  The plaintiff takes the objection no farther.

## IV.    Residual Functional Capacity Assessment

Lastly, the plaintiff argues the ALJ failed to perform the function-by-function assessment required by SSR 96-8p. (Pl.'s Br. at 17.)  Specifically, she argues that the ALJ failed to evaluate her abilities to sit, stand, walk, lift, carry, push, and pull.  (Pl.'s Br. at 17.)

The "RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p at *1.  "To determine the claimant's RFC, the ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members." *Morgan v. Barnhart*, 142 Fed. Appx. 716 (4th Cir. 2005) (citing 20 C.F.R. § 404.1529(c)(3) (2004)).

SSR 96-8p provides that the assessment of residual functional capacity must be based on all of the relevant evidence, including all allegations of physical and mental limitations or restrictions. *See* SSR 96-8p.  When allegations of physical and mental limitations or restrictions are made, the ALJ is to consider each function separately in making an assessment of residual functional capacity. *See id.*  However, the ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based on relevant evidence. *See id.*  When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity and no information is found in the record that

such a limitation or restriction exists, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.  *See id.*

Here, the ALJ found that the plaintiff could perform light work, with no climbing of ladders, occasional postural activities, and limited handling and fingering.  (R. at 16-18.) The plaintiff complains that there is no function-by-function analysis to support such a conclusion and then dismissively reduces the ALJ's consideration to no more than "DSS consultants say Ms. Robinson can perform light work and I agree." (Pl. Brief at 17.)  As with much of the plaintiff's characterization, this is not a fair interpretation of the decision.

First, for a page and a half prior to making the RFC assessment, the ALJ expressly discussed the plaintiff's various impairments and associated limitations, to the extent he found any present.  (R. at 16-17.)  The ALJ's treatment included consideration of the plaintiff's ability to use her hands; swelling in her ankles and its affect on her ability to stand; her ability to walk for five minutes at a time; the effectiveness of medications; a lack of significant findings of limitation; the presence of a normal gait; evidence of normal motor strength, intact sensation, balance; and lack of evidence of significant joint deformity.  (R. at 17.)  Based on *these* and other considerations, and not for any recourse to a DSS recommendation, the ALJ immediately stated, "Therefore, I have limited the claimant to light work activity . . . ." (R. at 17-18.)  He then articulated the remainder of the RFC.  (R. at 18.) Only after this discussion did the ALJ then also cite the finding of the DDS medical consultants in support of his already reasoned RFC.  (R. at 18.)  So, not only does the ALJ include some measure of an independent function-by-function assessment, contrary to the plaintiff's accusation, the ALJ's reliance on the DDS findings was merely supportive rather than determinative..

To the extent the function-by-function quality of the analysis leaves something to be desired in terms of thoroughness, the Court would agree with the defendant that the limitation to light work implicitly includes a finding that the plaintiff could stand or walk off and on for a total of approximately six hours of an eight-hour workday and a finding that the

plaintiff could occasionally perform the postural activities of climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling *see* SSR 83-10 ("The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). *See, e.g., Hines v. Barnhart*, 453 F.3d, 559, 563 (4th Cir. 2006) ("In light of SSR 96-8p, [the ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines physically [was] able to work an eight hour day"); *see also Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir.2003); Mellon v. Astrue, 2009 WL 2777653, at *11-15 (D.S.C. August 31, 2009). In fact, it is not even very implicit. The ALJ expressly indicates that the plaintiff can perform light work "as defined in 20 CFR 404.1567(b) . . . ." (R. at 16.)

An ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (citations omitted). Moreover, a formalistic factor-by-factor recitation of the evidence is simply not required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Dryer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ is not required to specifically refer to every piece of evidence in the decision). The ALJ's decision passes the minimal articulation test.

The plaintiff's recourse to *Vo v. Astrue*, 518 F. Supp. 2d 715, 731 (D.S.C. 2007) is unavailing because (1) here, the ALJ performed a suitable function-by-function analysis and (2) *Vo* was decided for the presence of other bases to remand besides the sufficiency of the function-by-function analysis. In fact, the *Vo* Court's consideration in that respect is fairly undeveloped precisely for the latter reason. *See id.*

13

The plaintiff has made other complaints about whether the ALJ's decision was based on substantial evidence, in general. (Pl. Brief at 19.) For all the reasons already discussed, the Court either rejects that there is any deficiency in the sufficiency of the evidence relied upon or that the plaintiff has made clear the harm resulting in any such alleged deficiency. No remand is in order.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED

s/Bruce Howe Hendricks
United States Magistrate Judge

February 18, 2011
Charleston, South Carolina